RICE–STIX DRY GOODS CO. v. FIRST NAT. BANK OF McGREGOR.
(No. 236–3421.)

(Commission of Appeals of Texas, Section A. June 1, 1921.)

Homestead ☞128 — Purchaser held estopped to deny validity of mortgage lien on ground that property constituted homestead.

That a purchaser of property subject to a lien takes with knowledge of vendor's recognition of the validity of the lien estops him to deny its validity, notwithstanding any unrevealed intention on the part of the purchaser subsequently to contest its validity on the ground that the property constituted a homestead.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by the Rice-Stix Dry Goods Company against John F. Gullidge and others. Judgment for plaintiff was reversed on the appeal of defendant First National Bank of McGregor (213 S. W. 344), and plaintiff brings error. Reversed, and judgment of trial court affirmed, as recommended by the Commission of Appeals.

J. D. Williamson, of Waco, for plaintiff in error.

D. A. Kelley, of Waco, for defendant in error.

SPENCER, J. Plaintiff, Rice-Stix Dry Goods Company, a corporation, instituted this suit to recover of John F. Gullidge and J. M. Fox, doing business as partners under the firm name and style of ,Gullidge Mercantile Company, a balance of $1,500 due upon three of a series of five promissory notes, dated April 8, 1914, executed and delivered by them to plaintiff in error and to foreclose the lien created by the execution of a deed of trust by J. F. Gullidge and wife, Lena Gullidge, dated April 8, 1914, upon block 1 of J. F. Gullidge addition to the town of McGregor in McLennan county, Tex., to secure plaintiff in the payment of these notes. Subsequent to the execution of the deed of trust and the recording of it in McLennan county, Tex., Gullidge conveyed the property in question to the First National Bank of McGregor, Tex., and the bank was made a party defendant in the suit and a foreclosure asked against it.

Gullidge answered, admitting the execution of the notes and deed of trust, and that the balance of $1,500 was unpaid and the deed of trust a valid and existing lien. He also alleged that at the time the property was deeded to the bank he was indebted to it personally and as indorser and surety for the Gullidge Company in the aggregate sum of several thousand dollars, and that, in consideration of the conveyance of the property to it, the bank, with knowledge of the deed of trust, agreed to accept the property, which he alleged was reasonably worth $2,500, subject to the deed of trust lien, and to credit him with $500 on his indebtedness to it. In his prayer, he asked that the bank be adjudged primarily liable for the debt, that plaintiff's lien be foreclosed, and that he be adjudged secondarily liable for the indebtedness.

The bank entered a general denial to plaintiff's and defendant Gullidge's petitions, and as against plaintiff specially pleaded that the deed of trust lien was void, invalid, and of no effect under the homestead exemption clause of the Constitution, for the reason that at the time of and long prior to the

execution of the deed of trust the property upon which the lien was attempted to be created was the homestead of Gullidge and wife, used and occupied as such by them, and that the recorded deed of trust and the claim of plaintiff under it created a cloud upon its title to the property. It prayed for judgment decreeing the deed of trust null and void, that the cloud cast because of its existence be removed, and that defendant bank be quieted in its title.

Plaintiff replied that Gullidge and wife never claimed the property as their homestead, that any homestead right they might have claimed was abandoned, that the bank, as a part of the consideration, took the property subject to the lien which Gullidge represented was a valid and existing lien and obligated and bound itself to discharge the debt and lien, and that it was estopped to deny the validity thereof. Gullidge adopted these allegations as his reply to the bank's answer. The cause was dismissed as to the defendant Fox.

Upon a trial before the court, without the aid of a jury, the court rendered judgment for plaintiff against Gullidge for the amount of notes, and against Gullidge and the bank, foreclosing the lien upon the property. Upon appeal, the Court of Civil Appeals held that the homestead in disconnected tracts of land depends on the actual use made of it, and that this use is controlling as against the negative declarations of the owner; that the evidence in this case showed that the property was the homestead of Gullidge and wife, and used as such by them at the time of the execution of the deed of trust; that a purchaser of land constituting part of a homestead may, as against one holding a deed of trust executed prior to the sale, assert that the land constituted a homestead, and the deed of trust lien therefore invalid; and that such purchaser is not estopped to deny the invalidity, unless as a part of the consideration he agrees to pay the debt or discharge the lien. As to the latter holding it concluded that the evidence was in an unsatisfactory state, and therefore reversed and remanded the cause. 213 S. W. 344.

In the view we take of the case, it is unnecessary to pass upon but one question, and that is: Is the grantee estopped, under certain undisputed facts of the case, to plead the invalidity of the lien? It is significant that neither Gullidge nor his wife claimed a homestead interest in the property. Both recognized the justness of the debt, which the lien was given to secure. At no time has either of them repudiated the obligation or urged the invalidity of the lien to secure it. The defense comes from without, and over their active and vigorous protest. Mrs. Gullidge is emphatic in her testimony to the effect that it was her understanding, at the time she executed the deed to the bank, that the bank was to satisfy the indebtedness and the lien given to secure it; otherwise, she would not have signed it.

Mr. Gullidge testified positively that he discussed the indebtedness of $1,500 with the bank's representative, who had actual and constructive notice of the lien, and informed him that it was protected by a valid lien and would have to be paid at a certain time. The bank's version of the transaction, as revealed by the testimony of its representative, Cavitt, does not in terms or by implication contradict the issue made by Gullidge. Cavitt testified:

"I did not tell Mr. Gullidge that the bank would be willing to credit him with $500 on that place upon a conveyance of that property to the bank, and the bank would step in his shoes as to the Rice-Stix Dry Goods Company debt. I do not know the language that was used, but the understanding with Mr. Gullidge and I was that we should take the title that he had for that $500, and it was subject to the record. I do not remember just what was said, but I understood there was supposed to be an incumbrance on the property."

The testimony of all the witnesses, including the bank's representative, is to the effect that the property was worth considerably more than $500. In fact, it seems not to be disputed that the land was reasonably worth $2,000. Cavitt's explanation of why the bank gave only $500 for the property, when it was worth considerably more, was that he knew that plaintiff thought it held a lien against the property, and that a contest as to its validity would result in involving considerable expense to the bank. He did not, however, inform Gullidge that the bank intended to contest the validity of the lien. The contention of Gullidge that as part of the consideration for the conveyance the bank assumed the payment of his indebtedness to plaintiff was determined adversely by the trial court, but the facts enumerated show conclusively, as a matter of law, that the bank accepted the property subject to the lien, and with the knowledge that Gullidge recognized it as valid and existing. Therefore the taking of the property subject to the lien and with knowledge of Gullidge's recognition of its validity, operates as an estoppel upon the part of the bank to deny its validity.

The force of these undisputed facts is not weakened by an unrevealed intention that may have lurked in the mind of the bank's representative to subsequently contest the validity of the lien. Knowing at the time of the acceptance of the deed that Gullidge recognized the validity of the lien, and that he considered it as security for the debt, it was its duty, if it intended to treat the lien as invalid, to inform Gullidge of such intention. It ought not, by secret reservation and in defiance of its agreement to take sub-

ject to the record, to be permitted to deprive Gullidge of the value which the lien represented to him as security for the debt.

The same rule applied here was applied by the Supreme Court of Minnesota in Alt v. Banholzer, 36 Minn. 57, 29 N. W. 674. In that case, the grantee purchased the mortgaged property with notice of, and took the deed subject to, the mortgage, and then sought to cancel the mortgage because of its invalidity, in that the property conveyed was the homestead, and that the wife did not join in the execution thereof. The court said:

"The point is made by the defendant that the plaintiff [grantee], therefore, acquired only the equity of redemption in the land by such conveyance, and that she has no rights to claim any greater interest therein. If such is the character of the deed, and it does not seem to be questioned by the plaintiff, we think the point well taken. It was entirely competent for the parties to so limit the effect of the conveyance, and to recognize and provide for the payment of the debt, for which the grantor was personally liable, so that, if required to pay the same, he might, in equity, have recourse against the land for his indemnity. The effect of such a conveyance is to make the land a primary fund for the payment of the debt, and to place the mortgagor in the situation of surety therefor only. Johnson v. Zink, 51 N. Y. 336, and cases cited. So the grantee of land, subject to a usurious mortgage which is absolutely void, cannot question its validity. 'He must pay it if he has agreed to; and, if not, he must allow the lands conveyed subject to it to be applied to its payment' "—citing authorities.

The uncontroverted facts showing that the bank took the property subject to the record, which revealed the lien and with knowledge that Gullidge recognized the lien as security to protect his indebtedness, it is, as a matter of law, under such facts, estopped to deny the validity of the lien and the mortgagee is therefore entitled to a judgment of foreclosure.

We recommend, therefore, that the judgment of the Court of Civil Appeals be reversed, and that of the trial court affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.